# In the United States Court of Federal Claims
No. 24-890
December 19, 2024
NOT FOR PUBLICATION

|  |
|---|
| **DEE MONBO,**<br><br>              *Plaintiff*,<br><br>v.<br><br>**UNITED STATES,**<br><br>              *Defendant*. |

*Dee Monbo*, *pro se,* for the plaintiff.

*Kristin E. Olson*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant.

## MEMORANDUM OPINION AND ORDER

The plaintiff, Dee Monbo, proceeding *pro se*, filed this action under the Contract Disputes Act ("CDA"). The plaintiff seeks review of the final decisions of a contracting officer rejecting her claims related to a contract for support services issued by the National Library of Medicine ("NLM"). The plaintiff is the owner and president of Monbo Group International ("Monbo Group"), a company that held a government-wide indefinite delivery indefinite quantity ("IDIQ") contract with the Government Services Administration ("GSA"). Under that GSA contract, agencies could award task orders to GSA contract-holders.

In October 2020, the NLM issued a task order pursuant to Monbo Group's GSA contract. The NLM mistakenly awarded the task order to "Monbo, Dee (1339680)." Ms. Monbo, acting as president of Monbo Group, asked the NLM to correct the mistake and reaward the task order to Monbo Group, the GSA IDIQ contract holder, to which the task order should have been issued. Upon Ms. Monbo's request and with her signed authorization and consent, the contracting officer terminated the task order for convenience and issued a revised task order to Monbo Group.

Ms. Monbo now brings a claim for money she alleges was owed to her, in her personal capacity, under the initial task order. She asserts that she, not Monbo Group, is the proper party in interest to bring claims for the pre-termination task order. The defendant has moved to dismiss.

The record reflects that Monbo Group is the proper party in interest to bring claims on a task order issued pursuant to the GSA contract. Ms. Monbo is not an attorney and therefore

cannot represent Monbo Group in pursuing its claim in this court.  Moreover, Monbo Group has already presented these same claims to the Civilian Board of Contract Appeals ("CBCA"), which rejected them.  Monbo Group did not appeal the CBCA's rejection of its claims to the Federal Circuit, as it was entitled to do.  The plaintiff may not now bring these same claims on her own behalf in the Court of Federal Claims.  The motion to dismiss is granted, and the case is dismissed.

## I.   FACTUAL BACKGROUND

The plaintiff owns Monbo Group (Federal Unique Identity Number FKYVCHTRAMU8), a company that offers auditing, consulting, tax, risk management, and other advisory services.  (ECF 29 at 5.)[1]  In addition to her ownership and operation of Monbo Group, Ms. Monbo holds a registered sole proprietorship in her name (Dee Monbo, Federal Unique Identity Number XQ6KZY77S5F8).

The contract at issue in this dispute was issued pursuant to a government-wide IDIQ contract that Monbo Group held with the GSA.  (ECF 29 at 7.)  Monbo Group received the GSA contract in August 2018.  (*Id*.)  On October 3, 2020, the NLM awarded a task order ("Order 158") for administrative-support services under the GSA contract.  (*Id.* at 212.)  Although Monbo Group, not Dee Monbo, held the GSA contract, Order 158 was mistakenly issued to "Dee Monbo (1339680)."  (*Id.*)

On February 8, 2021, Ms. Monbo wrote to the contracting officer for Order 158.  She noted that she had "just notice[d] that the contract is listed in my personal name instead of Monbo Group International" and requested that "[Order 158 be] put in the company name before we start invoicing."  (*Id.* at 346.)  To correct the mistake, Order 158 was bilaterally terminated for convenience on July 28, 2021, and replaced with Revised Order 76.  (*Id.* at 243.)  The new Revised Order 76 listed Monbo Group as the contractor and changed the billing from firm fixed price to labor hour.  (*Id.* at 246.)  Revised Order 76 also noted that "[a]ll funds associated with [Order 158] will be deobligated, reducing the order amount to $0."  (*Id.*)

On October 1, 2021, Ms. Monbo filed her first CDA claim on behalf of Monbo Group.  (*Id.* at 249-50.)  The claim, submitted on Monbo Group letterhead, asserted that "Monbo Group International [was] entitled to a claim for $775,680.00 for the [NLM]'s breach of the contract dated October 3, 2020."  (*Id.* at 249.)  Monbo Group was entitled to these funds because Monbo Group had not been paid for the four option years proposed in Monbo Group's offer.  The NLM

---

[1] The defendant challenges the court's jurisdiction to consider this case.  A court reviewing such a jurisdictional challenge may review facts outside of the pleadings for purposes of determining the court's jurisdiction.  *See Shoshone Indian Tribe of the Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).  The defendant submitted documents and evidence relevant to the court's jurisdiction in an appendix, filed as ECF 29, to its motion to dismiss.  The summary of the facts is based on the complaint and the materials supplied by the defendant in its appendix.

had declined to exercise the option.  (*Id.*)  Monbo Group's certified claim was signed by Ms. Monbo as the president of Monbo Group.

The contracting officer denied Monbo Group's claim on November 24, 2021.  He found that the NLM task order, unlike the GSA IDIQ contract, was for a period of one year and did not contemplate any option periods.  (*Id.* at 254.)  Accordingly, the contracting officer determined that the NLM "[was] not in breach because an agency cannot breach a contract by failing to exercise an option that does not exist."  (*Id.* at 257.)  Even if those options had existed, the contracting officer explained, the NLM "had no obligation to exercise the options."  (*Id.*)

Monbo Group presented a different contracting officer with another claim on November 4, 2021.  (*Id.* at 259.)  In this second claim, Ms. Monbo, on behalf of Monbo Group, asserted that it was entitled to $99,046.50 for "acquisition support services performed for the [NLM] under [the GSA contract]."  (*Id.*)  This claim, too, was denied in full.  In the January 3, 2022, decision, the second contracting officer determined that "the amount invoiced by Monbo Group does not reflect the amount of labor performed during the month of September 2021," and the amounts billed were "not consistent with the total billable hours or the proposed labor categories agreed upon under the original award."  (*Id.* at 265.)

Monbo Group appealed the contracting officers' November 24, 2021, and January 3, 2022, decisions to the CBCA on February 22, 2022.  (*Id.* at 312.)  The appeal, submitted by Ms. Monbo on behalf of Monbo Group, restated the claims initially presented to the contracting officers.  Additionally, Monbo Group argued that the contracting officer who issued Revised Order 76, voided Order 158, and wrote the January 3, 2022, decision lacked the authority to bind the government in contract.  (*Id.* at 328.)  The complaint to the CBCA specified that the contract award document for Order 158 listed "Monbo, Dee (1339680)" as the awardee instead of "the [a]ppellant."  (*Id.* at 327.)  This error was a problem, Monbo Group explained, because:

> The vendor Monbo, Dee (1339680) is not a GSA contractor.  Furthermore, the vendor Monbo, Dee (1339680) never submitted a bid to the [r]espondent.  Therefore, the contract award by the [r]espondent to the vendor Monbo, Dee (1339680) was invalid.

(*Id.*)

On January 26, 2023, the CBCA denied both of Monbo Group's claims.  (*Id.* at 387.)  As to the November 2021 decision, the CBCA found that Monbo Group could not identify any "language in the GSA service contract or in orders 158 and 76 that obligated the agency to exercise any options."  (*Id.* at 391.)  It also found that the contracting officer who issued Revised Order 76 possessed the contracting authority necessary to issue the revised order, cancel the erroneous one, and issue a decision on Monbo Group's November 4, 2021, CDA claim.  (*Id.* at 392.)  As to that contracting officer's January 2022 decision, the CBCA found that Monbo Group was paid the price-per-hour from its proposed quote for the NLM task order.  (*Id.* at 393.)  Accepting a rate lower than an amount that may have been identified in Monbo Group's GSA contract was within Monbo Group's discretion, and it could not now bring a claim alleging it had been underpaid.  (*Id.*)

Since the CBCA issued its decision, Ms. Monbo has filed six other CDA claims regarding Order 158.  In claims filed April 6, 2023 (ECF 29 at 267), July 7, 2023 (*id.* at 285), September 3, 2023 (ECF 1-1 at 29), February 18, 2024 (ECF 29 at 292), and February 24, 2024 (*id.* at 297), Ms. Monbo brought claims on behalf of "Dee Monbo (1339680)" relating to Order 158.  The contracting officer denied the April 6, 2023, and July 7, 2023, claims.  (*Id.* at 278, 287.)  Additionally, when the contracting officer denied the July 2023 claim on August 14, 2023, he informed Ms. Monbo that the decision was "the last final decision that NLM will issue in response to claims under Order 158."  (*Id.* at 287.)  On February 26, 2024, Ms. Monbo filed another claim with the contracting officer on behalf of Monbo Group.  (*Id.* at 300.)  In accordance with the contracting officer's August 2023 notice, none of these claims aside from the April and July 2023 claims has received a decision.

## II.   PROCEDURAL HISTORY

On June 4, 2024, Ms. Monbo filed this suit.  (ECF 1.)  The defendant moved to dismiss the complaint on October 11, 2024, for lack of subject-matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to comply with the Court of Federal Claims' rules.  (ECF 28.)  The defendant argued that Ms. Monbo's claim violates Rule 83.1 of the Rules of the Court of Federal Claims ("RCFC") because Monbo Group, not Ms. Monbo, is the correct plaintiff-in-interest.  Because Ms. Monbo is not an attorney, she may not represent a corporate entity under Rule 83.1(a)(3) of the Rules of the Court of Federal Claims ("RCFC").  Accordingly, she may not represent Monbo Group and has no standing as a *pro se* plaintiff, as she is not the party in interest.

In response to the argument based on RCFC 83.1 raised by the defendant's motion to dismiss, Ms. Monbo was ordered to show cause as to why her case should not be stayed for 60 days to allow Monbo Group to obtain legal representation.  (ECF 30.)  Ms. Monbo responded to both the motion to dismiss and the show-cause order on October 28, 2024.  (ECF 35.)  The plaintiff was permitted to proceed *pro se* because the underlying factual situation in her claim was "sufficiently opaque."  (ECF 36.)  The defendant replied to Ms. Monbo's opposition to the motion to dismiss on December 10, 2024.  (ECF 42.)  The plaintiff then submitted a document that the Court ordered be filed as a sur-reply on December 12, 2024.  (ECF 44.)  Oral argument is not necessary to resolve the motion to dismiss.

## III.   JURISDICTION AND STANDING

The Tucker Act, 28 U.S.C. § 1491(a), vests in the Court of Federal Claims jurisdiction over claims for money damages against the United States:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or

>      implied contract with the United States, or for liquidated or
>      unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Court of Federal Claims has jurisdiction over claims for breach of contract founded upon an express contract with the United States. *Hercules Inc. v. United States*, 516 U.S. 417, 422 (1996). The plaintiff's claim is founded on express contracts with the GSA and the NLM.

Ms. Monbo brings her claims under the CDA, 41 U.S.C. § 7104(b)(1). A court may hear a claim under the CDA only if that claim has been "submitted to the relevant contracting officer," and the contracting officer has "issued a final decision on that claim." *K-Con Bldg. Systems, Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015). Once the contracting officer has issued a final decision, a claimant wishing to appeal that decision has two options: the claimant may appeal the decision to an agency board, such as the CBCA (41 U.S.C. § 7104(a)), or "in lieu of appealing the decision . . . to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims" (41 U.S.C. § 7104(b)(1)).

Ms. Monbo submitted her claims to the contracting officers in October and November 2021, and the contracting officers issued final decisions on those claims. She then appealed those decisions to the CBCA, which issued its own final decision. Following that decision, she submitted six more claims arising from Order 158 to the contracting officer. She received final decisions on the first two of those claims and a statement from the contracting officer that no decisions on the remaining claims related to Order 158 would be issued.

A party "invoking federal jurisdiction . . . bears the burden of establishing standing." *Grit Energy Solutions, LLC v. Oren Technologies*, 957 F.3d 1309, 1319 (Fed. Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To have standing to "sue the sovereign on a contract claim, a plaintiff must be in privity of contract with the United States." *Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003). The defendant contests Ms. Monbo's standing, arguing that Monbo Group, not Ms. Monbo herself, is the party in privity of contract with the United States.

## IV.   STANDARD OF REVIEW

The defendant has moved to dismiss the complaint pursuant to RCFC 12(b)(1), 12(b)(6), and 41(b). Under RCFC 12(b)(1), a "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). It is the plaintiff's burden to establish by a preponderance of the evidence that subject-matter jurisdiction exists. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When a plaintiff's asserted jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true. *Shoshone Indian Tribe of the Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts and may review evidence

outside the pleadings.  *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)).

Dismissal for failure to state a claim upon which relief can be granted under RCFC 12(b)(6) "is appropriate when the facts asserted by the claimant do not entitle [the claimant] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  A court must both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party.  *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).  To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Under RCFC 41(b), "if the plaintiff fails to prosecute or to comply with [the Rules of the Court of Federal Claims] or a court order, the court may dismiss on its own motion, or the defendant may move to dismiss the action or any claim against it.  Such a dismissal "operates as an adjudication on the merits."  RCFC 41(b).  When a corporate plaintiff attempts to proceed without counsel in violation of RCFC 83.1(a)(3), the claim must be dismissed under RCFC 41(b).  *Industrial Supplies, LLC v. United States*, 144 Fed. Cl. 290, 293 (2019) (citing *Talasila, Inc. v. United States*, 240 F.3d 1064, 1066 (Fed. Cir. 2001)); *see also Every v. United States*, No. 24-1245, 2024 WL 5041120, at *3 (Fed. Cl. Dec. 9, 2024); *Brewster v. United States*, 150 Fed. Cl. 248, 248-51 (2020).

## V.   DISCUSSION

In response to the order to show cause and the defendant's motion to dismiss, Ms. Monbo argues that she, rather than Monbo Group, is the proper party in interest in this dispute.  She argues that Monbo Group is not a party to Order 158, the contract at issue in this case.  Ms. Monbo argues that, because "Monbo, Dee (1339680)" was awarded the task order by Order 158, she can properly proceed *pro se* to litigate claims "for work performed prior to the Notice of Termination for Convenience."  (Pltf.'s Opp. To Mtn. to Dismiss at 9.)

RCFC 83.1(a)(3) governs *pro se* litigants.  It provides that *pro se* litigants in the Court of Federal Claims may represent themselves or their immediate family members "but may not represent a corporation, an entity, or any other person in any proceeding before this court."  RCFC 83.1(a)(3).  The rule is direct and contemplates no exceptions.  A *pro se* litigant may not represent a corporate entity in the United States Court of Federal Claims.

Under RCFC 83.1(a)(3), Ms. Monbo may only proceed if she can show that she is the appropriate party in interest to bring her claim.  Her own previous claims under the NLM task order reflect that Monbo Group is the appropriate plaintiff to bring this claim.  Ms. Monbo's filings in this case do not show otherwise.  As Ms. Monbo herself recognizes, her claim seeks review of a contracting officer's final decision, as required by the CDA.  (*See* Pltf.'s Opp. To Mtn. to Dismiss at 4-5.)  Each of these claims was previously presented to the contracting officer on behalf of Monbo Group.  The claims were written on Monbo Group letterhead and signed by Ms. Monbo in her role as "president" of Monbo Group.  (ECF 29 at 249-50, 259-60.)  Moreover,

the claims refer exclusively to "Monbo Group" or "Monbo Group International." (*Id.*) Dee Monbo's name appears only on the signature block of the claims as Monbo Group's president.

Ms. Monbo's correspondence with the contracting officer who cancelled Order 158 and executed Revised Order 76 reflect that, prior to the CBCA's decision, Ms. Monbo always considered Monbo Group to be the proper party in privity with the NLM to the bring claims pertaining to Order 158. In fact, Ms. Monbo herself first raised the misidentification of the awardee to the NLM contracting officer and requested that the task order be corrected to reflect the correct awardee, Monbo Group. Order 158 was cancelled and Revised Order 76 issued only after Ms. Monbo informed the contracting officer of the error. (ECF 29 at 346.) When the NLM amended the task order to reflect the correct awardee, Monbo Group, Ms. Monbo signed the document to terminate Order 158 for convenience. (*Id.* at 243.)

Ms. Monbo never personally held the GSA contract; she could not have been awarded Order 158, which could only have been awarded to GSA contract holders. The award of the NLM task order to a holder of the GSA contract had to have been to Monbo Group, and Ms. Monbo recognized this fact all along.

Monbo Group, not Ms. Monbo, is the proper party in interest to bring this claim. Ms. Monbo's attempt to litigate this claim *pro se*, therefore, violates RCFC 83.1(a)(3).[2] The complaint must be dismissed pursuant to RCFC 41(b). *Industrial Supplies, LLC*, 144 Fed. Cl. at 293.

Even if Monbo Group were substituted as the plaintiff and were represented by counsel, dismissal would still be required, because the CDA's election doctrine bars the claims. The election doctrine stipulates that once a claimant has received a final decision from a contracting officer, the claimant may seek review of the contracting officer's final decision by exercising either one of two options. A claimant may "appeal the decision to an agency board," such as the CBCA. 41 U.S.C. § 7104(a). In the alternative, a claimant may "bring an action directly on the claim in the United States Court of Federal Claims." 41 U.S.C. § 7104(b)(1). The law provides expressly that review in the Court of Federal Claims is "*in lieu of*" an appeal before an agency board. Thus, for a claim within the authority of the CBCA, a claimant may elect to seek review either before the CBCA or before the Court of Federal Claims, but not both. *See National Neighbors, Inc. v. United States*, 839 F.2d 1539, 1542 (Fed. Cir. 1988) ("the contractor is precluded . . . from pursuing its claims in both forums"). Having elected to seek review of the denial of her claims before the CBCA, Monbo Group could only seek review of the unfavorable CBCA decision through an appeal to the Court of Appeals for the Federal Circuit. That court,

---

[2] It may be possible for Ms. Monbo to pursue a claim *pro se* on behalf of "Monbo, Dee (1339680)," a sole proprietorship. *See Every v. United States*, 2024 WL 5041120, at *3 n. 4. This possibility need not be explored here, however, because Monbo Group is the only proper plaintiff-in-interest to pursue claims related to Order 158. Even if Ms. Monbo could bring a claim on behalf of her sole proprietorship as a general matter, she does not have standing to do so under the contracts at issue.

not the Court of Federal Claims, is the only appropriate judicial forum in which to seek review of a decision of the CBCA.

Moreover, a claimant may not separate a claim under the CDA into multiple claims to bring the claims before two different fora. *See Glenn v. United States*, 858 F.2d 1577, 1580 (Fed. Cir. 1988) (plaintiff that appealed contracting officer's liability decision before agency board could not appeal the contracting officer's subsequent quantum decision in the Court of Federal Claims).

The CDA's limitation that forces claimants to elect either forum but not both bars the present claim. The plaintiff argues that "Dee Monbo has never appealed any . . . of her termination for convenience claims before the [CBCA]." (Pltf.'s Opp. To Mtn. To Dismiss at 7.) That statement ignores the fact both that Dee Monbo is not the proper party to bring these claims and that Monbo Group has already brought them and lost. Monbo Group, as the holder of the GSA contract and the awardee of the task order under Revised Order 76 that replaced the terminated Order 158, is the only party that may bring claims based on Order 158. It has already done so before the CBCA, and neither Ms. Monbo nor Monbo Group may pursue those same claims in the Court of Federal Claims. The plaintiff here is trying to play games; the CDA does not permit claimants to play such games.

## VI.   CONCLUSION

Ms. Monbo has failed to demonstrate that she is the proper party in interest to pursue Monbo Group's claims. Any claim based on the terminated Order 158 must be brought by Monbo Group, and not by Ms. Monbo personally. Monbo Group is the only proper plaintiff. Under RCFC 83.1(a)(3), Ms. Monbo may not represent Monbo Group, because she is not its attorney. Ms. Monbo's *pro se* claim on Monbo Group's behalf violates RCFC 83.1(a)(3), and her claim is dismissed pursuant to RCFC 41(b).

Even if Ms. Monbo's claims could proceed to the merits, they would be barred under the CDA's election doctrine because she availed herself of an appeal to the CBCA, which rejected her claims. She may not now seek review of those same claims or any factually identical claims in the Court of Federal Claims. The complaint therefore fails to state a claim and is dismissed under RCFC 12(b)(6).

Accordingly, the defendant's motion to dismiss (ECF 28) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment dismissing the complaint with prejudice. No costs are awarded.

It is so **ORDERED.**

s/ Richard A. Hertling<br>
**Richard A. Hertling**<br>
**Judge**